PHŒNIX COTTON MANUFACTURING COMPANY vs. EPHRAIM FULLER.

If the holder of a bill of exchange makes a valid compromise with the assignees of the acceptor, who is insolvent, by which the proof of the claim is withdrawn and the insolvent estate released, he thereby discharges from liability a stranger to the bill who wrote his name upon the back of it before its delivery.

CONTRACT upon the following bill of exchange in favor of the plaintiffs' agent : " $2658.81. Clinton April 1, 1857. Six months after date, pay to the order of A. G. Snell, agt., twenty-six hundred fifty eight dollars $\frac{81}{100}$, value received, and charge the same to account of your ob't servant, A. L. Fuller. To Messrs. E. & J. Holmes, Boston." The defendant wrote his name upon the back of this bill, and it was accepted by the drawees.

At the trial in this court, before *Dewey*, J., it was agreed that the drawer and acceptors of the bill failed and went into insolvency and obtained their discharge. The plaintiffs proved their claim against the estate of the drawer and received a dividend of thirty-seven and six tenths per cent. ; they also proved it against the estate of the acceptors, and the assignees appealed from the decision of the judge of insolvency allowing the claim, and while the appeal was pending an agreement in writing was made between the plaintiffs and the assignees by which the plaintiffs agreed to receive ten per cent. of the claim, " in full discharge of any right of proof they may have against the estate of said Holmes under said proceedings in insolvency, and said claim shall be withdrawn from proof," and this sum was accordingly paid, and the claim withdrawn. A dividend of thirty per cent. was paid to the creditors whose claims were allowed against the estate of the acceptors.

Upon these facts the case was reserved for the determination of the whole court.

*W. P. Webster*, for the plaintiffs.

*H. C. Hutchins*, for the defendant.

CHAPMAN, J. The parties in this action evidently intended to

make some kind of contract with each other; but either through carelessness or ignorance, they have made it very difficult to ascertain what contract was intended. A. L. Fuller made a draft in favor of the plaintiffs, upon E. & J. Holmes, and the defendant, not being a party to it, wrote his name on the back as if he were indorser. But as he was not payee or indorsee, he could not be an indorser. If it had been a note, it is held in this commonwealth that such an irregular signature would make him an original promisor. But as this is a bill of exchange, the only way to give any validity to his contract as to the plaintiffs, to whom he intended to become bound, is, to treat him as a drawer, and to regard the bill as an independent bill drawn by him on E. & J. Holmes in favor of the plaintiffs. This view is sustained by the case of *Penny* v. *Innes*, 1 Cromp., Mees. & R. 439, and 5 Tyrwh. 107. In that case William Wilson had drawn a bill payable to his own order, and indorsed it as follows: " Pay Messrs. Brookes & Penny or order. Wm. Wilson." Under this indorsement the defendant Innes wrote his name, not being a party to the bill. Thus his undertaking was quite analogous to that of the present defendant. The bill having been dishonored, it was held that the surviving partner of the firm of Brookes & Penny could maintain an action against Innes as an original drawer. This is substantially the same doctrine as that which holds that every indorser of a bill is a new drawer. In the present case the bill was accepted, and it is obvious that the relation of the defendant to the plaintiffs was that of a mere surety. He had, therefore, the rights of a surety; and whatever transactions between the plaintiffs and the acceptors would discharge a surety, would discharge him. It appears that the draft was dishonored, and the original drawer and also the acceptors went into insolvency. The plaintiffs proved their claim against the drawer's estate, and received their dividend. They also proved it against the acceptors' estate, but the assignees appealed. While the appeal was pending, the plaintiffs compromised with the assignees, and took ten per cent., agreeing not to prosecute their claim further, but to discharge the estate. The creditors who proved their claims received thirty per cent.

The plaintiffs, by their compromise, not only sacrificed the difference, but the withdrawal of the claim might also have had an effect upon the question of the debtors' discharge, and upon other questions that might arise, the effect of which it is impossible to know. It also operated to prevent the defendant from proving the claim in insolvency, if he had been disposed to do so. The court are therefore of opinion that the compromise being prejudicial to the defendant operated to discharge nim. 3 Kent Com. (6th ed.) 112. Story on Bills, § 425. *Lynch* v. *Reynolds*, 16 Johns. 41.                    *Plaintiffs nonsuit.*